UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Huntington National Bank, | Case No. 21-cv-2057 (WMW/JFD) |
| Plaintiff, | **ORDER** |
| v. | |
| TNI Trucking LLC and Ian K. Clarke, | |
| Defendants. | |

Before the Court is Plaintiff's motion for default judgment. (Dkt. 20.) For the reasons addressed below, the Court grants in part and denies in part the motion.

## BACKGROUND

Plaintiff Huntington National Bank (Huntington), a national banking association and the successor-by-merger to TCF National Bank (TCF),[1] alleges that Defendant TNI Trucking LLC (TNI) entered into an Installment Payment Agreement (IPA) with TCF for a financed amount of $165,811.61. The parties entered into the IPA to facilitate TNI's purchase of certain software and equipment. Under the IPA, TNI was required to make 60 monthly payments of $3,243.32 to TCF. The IPA also entitled TCF to obtain fees, costs and expenses associated with TCF exercising its rights and remedies under the IPA. The IPA was secured by a continuing guaranty (Guaranty) from Defendant Ian K. Clarke in favor of the Creditor. The Guaranty provided an absolute guaranty of full payment of all

---

[1] Huntington refers in its filings to Huntington and TCF collectively and interchangeably as "Creditor." When it is unclear to which entity Huntington refers, the Court uses the term "Creditor" so as to align with Huntington's allegations.

obligations that TNI owed under the IPA and obligated Clarke to pay all costs, fees and expenses that the Creditor incurred in connection with enforcing the Guaranty along with TNI's other obligations.

TNI defaulted on the IPA by failing to make timely payments in June 2021, and Huntington notified TNI and Clarke of this default in a letter dated August 20, 2021. On September 7, 2021, the Creditor sent TNI and Clarke a second notice of default and reminded TNI and Clarke of the acceleration provision in the IPA.

Huntington commenced this action on September 17, 2021, alleging breach of contract.[2] Huntington served Clarke on September 17, 2021, and served TNI on December 6, 2021. The Clerk of the Court entered default as to Clarke on November 24, 2021, and default as to TNI on February 8, 2022. Neither Defendant has appeared in this case. Huntington now moves for default judgment.

## ANALYSIS

To obtain a default judgment, a party must follow a two-step process. The party seeking a default judgment first must obtain an entry of default from the Clerk of Court. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Here, on Huntington's application, the

---

[2] The complaint also alleges unjust enrichment and promissory or equitable estoppel and asserts Huntington's rights to claim and delivery of collateral and priority liens. But at the default-judgment hearing, Huntington indicated that it would not object to the Court entering judgment only on its breach-of-contract claim and dismissing its remaining claims.

Clerk of the Court entered default as to Clarke on November 24, 2021, and default as to TNI on February 8, 2022. The entries of default are supported by the record, which reflects that Clarke and TNI were properly served with the complaint and summons and they failed to answer or otherwise respond to the complaint.

After default is entered, the party seeking affirmative relief "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Upon default, the factual allegations in the complaint are deemed admitted except those relating to the amount of damages. Fed. R. Civ. P. 8(b)(6); *accord Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010). However, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Murray*, 595 F.3d at 871 (internal quotation marks omitted); *accord Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010). The Court, therefore, must evaluate the factual basis for each claim Huntington advances in its complaint.

## I.      Breach of Contract by TNI (Count I)

Huntington alleges breach of contract by TNI. Under Minnesota law,[3] "[t]he elements of a breach of contract claim are (1) formation of a contract, (2) performance by

---

[3]     Huntington does not address choice of law in its memorandum in support of its motion for default. "A federal court sitting in diversity employs the choice of law principles of the forum state when deciding whether a contractual choice of law provision applies." *Katch, LLC v. Sweetser*, 143 F. Supp. 3d 854, 865 (D. Minn. 2015). Minnesota generally enforces choice-of-law provisions, applying the substantive law agreed to by the parties. *Id.* at 866 (citing *Schwan's Sales Enters., Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 596 (8th Cir. 2007)). The IPA contains a choice-of-law provision, which provides that "this IPA, and all matters arising from this IPA including all interest and finance charges hereunder, shall be governed by, and construed in accordance with federal law and, to the extent not preempted by federal law, by the laws of the state of Minnesota (excluding

3

plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014).

Huntington alleges that the Creditor entered into the IPA with TNI on January 22, 2021, whereby the Creditor lent TNI $165,811.61. Huntington further alleges that TNI breached the IPA by failing to make its monthly payment of $6,486.66 due on June 25, 2021.[4] According to Huntington, failing to make a required monthly payment is an occurrence that entitles the Creditor to exercise all of its remedies under the contract, including accelerating the entire indebtedness. Huntington alleges that it provided TNI notice of the default in both August and September 2021. In Huntington's September 2021 notice, Huntington further notified TNI that it planned to exercise its right to accelerate the payments—that is "to declare immediately due and payable the sum of all amounts currently due under the IPA, plus all unpaid Payments for the remaining term of the IPA." Huntington alleges that, as of September 7, 2021, TNI owed Huntington $167,314.81.

Accepting these facts as true, Huntington has alleged sufficient facts to support a breach-of-contract claim against TNI. For this reason, Huntington has established that the unchallenged facts constitute a legitimate claim for breach of contract as to TNI.

---

conflicts laws.)." The Guaranty also contains a choice-of-law provision that specifies that any dispute arising out of the Guaranty is to be governed by Minnesota law. Accordingly, the Court applies Minnesota law to the claims in this action.

[4]   In the letter that Huntington sent TNI on September 7, 2021, Huntington states that TNI failed to make a monthly payment of $3,243.32—not $6,486.66—on June 25, 2021.

## II.     Breach of Contract by Clarke (Count II)

Huntington also alleges breach of contract by Clarke. Huntington alleges that the IPA is secured in part by a Guaranty from Clarke in favor of the Creditor. Huntington alleges that under the Guaranty, Clarke "unconditionally and absolutely guaranteed the full and prompt payment of all obligations of [TNI] including, without limitation, amounts due under the IPA." The Guaranty also provides that Clarke is liable for all costs and expenses incurred by the Creditor in connection with enforcing the Guaranty and TNI's obligations. Huntington alleges that TNI breached the IPA by failing to make its monthly payment of $6,486.66 due on June 25, 2021.[5] Huntington provided Clarke notice of the default in both August and September 2021. In Huntington's September 2021 letter, Huntington further notified Clarke that it planned to exercise its right to accelerate the payments—that is "to declare immediately due and payable the sum of all amounts currently due under the IPA, plus all unpaid Payments for the remaining term of the IPA." Huntington alleges that, as of September 7, 2021, TNI owed Huntington $167,314.81. Huntington alleges that Clarke has failed and refused to pay the amounts owed under the IPA, thereby breaching the Guaranty.

Accepting these facts as true, Huntington has alleged sufficient facts to support a breach-of-contract claim against Clarke. For this reason, Huntington has established that the unchallenged facts constitute a legitimate claim for breach of contract as to Clarke.

---

[5]     In the letter that Huntington sent Clarke on September 7, 2021, Huntington contends that TNI failed to make a monthly payment of $3,243.32—not $6,486.66—on June 25, 2021.

### III. Damages

Huntington asks the Court to award damages in its favor. A district court must ascertain the amount of damages before entering a default judgment. *See Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir. 2000) ("[A] default judgment cannot be entered until the amount of damages has been ascertained." (internal quotation marks omitted)). A party seeking a default judgment must prove its damages to a reasonable degree of certainty. *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 819 (8th Cir. 2001). A district court may determine damages by computing from the facts of record the amount that the plaintiff is lawfully entitled to recover and enter judgment accordingly. *Pope v. United States*, 323 U.S. 1, 12 (1944).

Huntington argues that Defendants owe $174,825.06 in actual damages as of May 3, 2022. Huntington first contends that Defendants owe $35,676.52 in damages for past due payments, representing eleven installment payments of $3,243.32 each. This amount is supported by the IPA, which identifies the monthly payment amount as $3,243.32 and provides that upon default, Huntington may "declare immediately due and payable and recover from Debtor, as liquidated damages and not as a penalty, the sum of all amounts then due." TNI defaulted when it failed to make a monthly payment due on June 25, 2021. The amount Huntington requests in damages for past due payments represents the eleven monthly payments TNI failed to make from June 25, 2021, until April 25, 2022.

6

Accordingly, Huntington has proved to a reasonable degree of certainty its entitlement to $35,676.52 in past-due monthly payments.

Huntington also contends that it is entitled to the present value of 45 future or accelerated monthly installments at an interest rate of 6.49 percent, totaling $129,430.70. The IPA provides that, upon default, Huntington may recover "all unpaid Payments for the remaining term of this IPA, discounted from their respective due dates at the implicit interest rate for this IPA, as conclusively determined based on the Financed Amount and the amount and timing of each Payment." The IPA provides for a 60-month loan term. The IPA also provides that "consecutive monthly installments each equal to the Payment Amount set forth above" will be due "beginning on the date that is one month after the Funding Date and then on the same day of each calendar month thereafter." The IPA does not specify the Funding Date, but Huntington attaches a "Pay Proceeds and Acceptance Confirmation" (Confirmation) dated January 22, 2021, which confirms that TNI accepted the equipment and software and authorized Creditor to pay for those goods. Based on the Confirmation, it is reasonable to infer that the Funding Date was on or about January 22, 2021, and that the first installment payment was due on or about February 22, 2021. TNI defaulted in June 2021. Accordingly, at the time of default, 56 payments remained due under the IPA. As addressed above, Huntington is entitled to 11 overdue installment payments as of May 2022. Less those payments, Huntington is entitled to 45 future or accelerated payments. Huntington also provides an accounting of its calculation of the 6.49 percent implicit interest rate. Huntington, therefore, has proved to a reasonable

degree of certainty its entitlement to the present value of 45 future or accelerated monthly payments at an implicit interest rate of 6.49 percent, totaling $129,430.70.

Huntington also contends that it is entitled to a 5 percent penalty on default. The IPA provides that Huntington is entitled to "a fee equal to 5%" of all unpaid payments for the remaining term of the IPA "if the Event of Default occurs during months 0 through 12." Here, as addressed above, TNI defaulted four months into the loan term. Five percent of the total of the unpaid payments, $129,430.70, is $6,471.54. Huntington has proved to a reasonable degree of certainty its entitlement to a penalty totaling $6,471.54.

Huntington also contends that it is entitled to $3,246.30 in damages for late fees. The IPA provides that if "any amount payable hereunder is not paid within ten (10) days of its due date, Creditor may impose a late fee of up to 10% of the amount of the past due payment." Here, as addressed above, TNI failed to pay eleven monthly payments totaling $35,676.52. Late fees of $3,246.30 equal approximately 9.10 percent of the total amount of overdue payments. Accordingly, Huntington has proved to a reasonable degree of certainty its entitlement to late fees totaling $3,246.30.

In summary, Huntington has established to a reasonable degree of certainty its entitlement to $174,825.06.

**III.   Attorneys' Fees**

Huntington seeks $16,185.00 in attorneys' fees and expenses, to which Huntington argues it is entitled under the IPA. Minnesota law recognizes the freedom of contracting parties to bargain for the remedy of attorneys' fees. *See State Bank of Cokato v. Ziehwein*, 510 N.W.2d 268, 270 (Minn. Ct. App. 1994). Minnesota courts enforce contractual

obligations to pay attorneys' fees if the amount of fees allowed under the contract is reasonable. *Id.* The IPA provides that Huntington may "recover from Debtor, and Debtor agrees to pay, all costs and expenses incurred by Creditor in the exercise of any right or remedy available to it under this IPA, including . . . costs of obtaining money damages and attorneys' fees and expenses for any purpose related to this IPA."

Courts apply the lodestar method to calculate reasonable attorneys' fees. *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294 (8th Cir. 1996). Under this method, the lodestar amount is presumed to be the reasonable fee to which counsel is entitled. *McDonald v. Armontrout*, 860 F.2d 1456, 1458 (8th Cir. 1988). To calculate the lodestar amount, a district court multiplies the number of hours reasonably expended by a reasonable hourly rate, *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), which is "in line with [the] prevailing [rate] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The party seeking an attorneys' fees award bears the burden to establish entitlement to an award with documentation that addresses the nature of the work and the appropriateness of the hourly rates and hours expended. *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley*, 461 U.S. at 437).

Here, Huntington does not provide billing records substantiating its claimed attorneys' fees and costs. Huntington also does not identify the attorneys who worked on this case, their individualized experience or their hourly rates. And Huntington does not provide the number of hours its attorneys expended. Huntington states that it is willing to provide the Court with its attorneys' invoices for an *in camera* review but provides no

justification for why it did not submit these records with its motion. Because Huntington has failed to establish its entitlement to attorneys' fees, the Court denies Huntington's request for attorneys' fees and costs.

### IV. Post-Judgment Interest

Huntington requests post-judgment interest. A prevailing party has a right to post-judgment interest under 28 U.S.C. § 1961. Post-judgment interest begins to accrue on the day judgment is entered and accrues on a plaintiff's total award, including costs and attorneys' fees, until the judgment is satisfied. *Jenkins by Agyei v. Missouri*, 931 F.2d 1273, 1275 (8th Cir. 1991) ("The phrase 'any money judgment' in section 1961(a) is construed as including a judgment awarding attorneys' fees."); *see, e.g.*, *Minn. Voters All. v. City of Saint Paul*, No. 19-cv-0358 (WMW/HB), 2021 WL 1100901, at *7 (D. Minn. Mar. 23, 2021). Under Section 1961(a), post-judgment interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." 28 U.S.C. § 1961(a). The Court, therefore, awards post-judgment interest at the rate set by Section 1961(a).

### ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiff Huntington National Bank's motion for default judgment, (Dkt. 20), is **GRANTED** as to Counts I and II.

2.  Counts III, IV, V, and VI of Plaintiff Huntington National Bank's complaint, (Dkt. 1), are **DISMISSED WITHOUT PREJUDICE**.

3.  The Clerk of Court shall enter judgment in the amount of $174,825.06, plus post-judgment interest as calculated pursuant to 28 U.S.C. § 1961(a) against Defendants TNI Trucking LLC and Ian K. Clarke and in favor of Plaintiff Huntington National Bank.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  November 3, 2022                          s/Wilhelmina M. Wright
                                                  Wilhelmina M. Wright
                                                  United States District Judge